889 P.2d 254

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**GLEN SLAUGHTER & ASSOCIATES,
Defendant–Appellant.**

No. 15437.

Court of Appeals of New Mexico.

Dec. 21, 1994.

**220**

Tom Udall, Atty. Gen., Daniel J. Pearlman, Richard J. Klein, Asst. Attys. Gen., Santa Fe, for plaintiff-appellee.

Todd Hotchkiss, Timothy M. Padilla & Associates, P.C., Albuquerque, for defendant-appellant.

### OPINION

HARTZ, Judge.

Glen Slaughter & Associates (Defendant) appeals from its conviction on one count of fraud over $20,000, in violation of NMSA 1978, Section 30–16–6 (Repl.Pamp.1994), and one count of bribery of a public officer or employee, in violation of NMSA 1978, Section 30–24–1(D) (Repl.Pamp.1994). Defendant acted as third-party administrator of insurance programs for the New Mexico Public School Insurance Authority (the Insurance Authority) and the New Mexico Retiree Health Care Authority (the Retiree Authority). The bribery count alleged that Defendant made a gift to Tony Armijo, the executive director of both authorities, to induce him to support increases in contract payments by the authorities to Defendant. The fraud count alleged that Defendant defraud-

ed the Board of Directors of the Insurance Authority (the Board) into granting it increased contract payments.

On appeal Defendant contends that (1) the district court erred in admitting into evidence a tape recording of the June 17, 1991, meeting of the Board, (2) the court should have quashed the indictment because of prosecutorial misconduct during the grand jury proceedings, (3) the bribery statute does not encompass the alleged misconduct, and (4) the evidence was insufficient to sustain the guilty verdicts. We affirm.

### I. ADMISSIBILITY OF THE TAPE RE-CORDING

The conduct of the June 17, 1991, Board meeting was central to the State's case. The State contended that at the meeting (1) Armijo deceitfully urged the Board to increase contract payments to Defendant and (2) employees of Defendant who attended the meeting misled the Board and failed to correct Armijo's misrepresentations. Further details regarding the circumstances of the meeting appear in *State v. Armijo*, 118 N.M. 802, 887 P.2d 1269 (Ct.App.1994).

Defendant argues that admission at trial of the tape recording of the meeting violated the hearsay rule, *see* SCRA 1986, 11–802 (Repl.1994), and its constitutional right to confront the witnesses against it, *see* U.S. Const. art. VI; N.M. Const. art. II, § 14.[1] As we understand Defendant's briefs on appeal, it claims that use of the recording violated the hearsay rule and confrontation clause in two respects. First, because the recording itself could not be cross-examined, use of the recording to prove what happened at the meeting was improper. Second, regardless of how the State proved what was said at the meeting, the statements of those who spoke were inadmissible hearsay and the speakers should have been called as witnesses to explain their statements.

We begin with the use of the recording to prove what happened at the meeting. De-

---

**1.** We assume that a corporation enjoys the constitutional right of confrontation. *See United States v. Thevis*, 665 F.2d 616, 645 (5th Cir.), *certs. denied*, 456 U.S. 1008, 102 S.Ct. 2300, 73

L.Ed.2d 1303 (1982), 458 U.S. 1109, 102 S.Ct. 3489, 73 L.Ed.2d 1370 (1982), *and* 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982).

fendant correctly points out that the recording cannot be cross-examined. But neither can a skid mark, a bloodstain, a glove, or a fingerprint. The recording is not testimonial evidence but a species of real evidence. Just as a fingerprint may generate an inference that a defendant was at the scene of the crime, the electromagnetic impressions on a recording tape may generate an inference of what was said on a particular occasion. The strength of the inference derives from the authentication of the real evidence—the tape recording. A witness (who *is* subject to cross-examination) can identify the tape recording as one produced by a specific machine at a specific time and place and can allay concerns about tampering with the tape. *See* SCRA 1986, 11–901(A) (Repl.1994) ("The requirement of authentication ... is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.").

Nothing in our hearsay rule or constitutions demands the impossible task of subjecting the real evidence itself to cross-examination. It would be ironic if the law required reliance on human testimony about what happened because it rejected the more trustworthy methods of modern (and not-so-modern) technology. As real evidence, authenticated tape recordings and the like are universally admissible to prove what happened. *See State v. Henderson,* 100 N.M. 260, 261–62, 669 P.2d 736, 737–38 (Ct.App.) (photograph at automated teller machine; discussing the "silent witness" approach to such evidence), *cert. denied,* 100 N.M. 259, 669 P.2d 735 (1983); *United States v. Oaxaca,* 569 F.2d 518, 525 (9th Cir.), *cert. denied,* 439 U.S. 926, 99 S.Ct. 310, 58 L.Ed.2d 319 (1978); *State v. Berky,* 214 Ga.App. 174, 447 S.E.2d 147, 148–49 (1994) (videotape; collecting cases); *see generally* 3 David W. Louisell & Christopher B. Mueller, *Federal Evidence* § 390, at 674–76 (1979); 3 John H. Wigmore, *Wigmore on Evidence* § 790 (Chadbourn rev. 1970).

Nevertheless, the admissibility of the tape recording as evidence of what happened at the meeting does not mean that use of the recording avoids all hearsay and confrontation-clause challenges. What is proved by the recording may turn out to be inadmissible. After all, the testimony of a witness at trial is undoubtedly a proper means of proving what another person said on a prior occasion, yet what that other person said may be excludable as hearsay. Likewise, a properly authenticated telegram may constitute admissible real evidence, but there may be a valid hearsay objection to letting the jury see or hear a particular assertion in the telegram. Hence, we must now address Defendant's contention that statements by participants at the June 1991 Board meeting—whether the statements are proved by the tape recording or by trial testimony of those who attended the meeting and heard the statements—were inadmissible under the hearsay rule or the confrontation clause.

■ Our starting point is the hearsay rule. SCRA 1986, 11–801 (Repl.1994), provides the following key definitions:

A. **Statement.** A "statement" is

(1) an oral or written assertion or

(2) nonverbal conduct of a person, if it is intended by the person as an assertion.

B. **Declarant.** A "declarant" is a person who makes a statement.

C. **Hearsay.** "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

Anything asserted at the Board meeting was a statement, and the persons who spoke at the meeting were declarants. The statements by the declarants were not made while the declarants were testifying at Defendant's trial. Therefore, whether those statements constituted hearsay turns on whether evidence of the statements was offered "to prove the truth of the matter asserted."

It is certainly possible that a statement at the Board meeting could be offered for a hearsay purpose. For example, if someone at the meeting had stated that Defendant had bribed Armijo and if the State offered the statement as evidence that Defendant had in fact bribed Armijo, then the statement would be hearsay because it was offered for the truth of the matter asserted (namely, that Defendant bribed Armijo).

On the other hand, if the State wished to prove that Armijo defrauded the Board by falsely stating at the meeting that the number of participants in the Insurance Authority's insurance plan had greatly increased, Armijo's statement would not be hearsay. Although Armijo's statement was an assertion—he was asserting that Defendant's caseload had increased—the State was not using Armijo's statement to prove the truth of the assertion. On the contrary, the State contended that the assertion was false and therefore constituted part of ·the fraud against the Board. The State's sole purpose was to prove that Armijo made the statement. The State then needed other evidence to establish the falsity of Armijo's statement. By the same token, if Defendant wished to contend that Armijo's statement was true, it would need to produce evidence other than the statement to establish the statement's truth. To the extent that Defendant tried to use Armijo's statement as evidence that in fact Defendant had an increased caseload, Defendant would be using the statement for a hearsay purpose (to prove the matter asserted) and the statement would consequently be inadmissible (unless some exception to the hearsay rule applied).

Defendant's briefs on appeal do not point to any assertion by any person at the Board meeting which the State offered into evidence to prove the truth of the matter asserted. In other words, Defendant has not shown that the State used any of what was said at the meeting for a hearsay purpose. Thus, the State's evidence of what occurred at the meeting did not constitute hearsay. *See generally Anderson v. United States,* 417 U.S. 211, 219–21, 94 S.Ct. 2253, 2260–61, 41 L.Ed.2d 20 (1974).

Defendant presses the point, however, on the ground that some of the statements made at the meeting—in particular, statements by Armijo and representatives of Defendant— were, according to the State, "the crime itself." It contends that these statements were inadmissible because Defendant had no opportunity to question the persons making the statements concerning the meaning of the statements, their truth, and why they were made.

■ To be sure, the answers to such questions may be relevant to the issues in the case. But the relevance of such matters does not in any way suggest that there is something inherently unreliable about the evidence that the statements were made. The purpose of the hearsay rule is to exclude unreliable evidence. The reason for excluding hearsay is that the assertion by the declarant may be unreliable (that is, untrue) because of the declarant's faulty perception of the facts, the declarant's faulty memory of what was perceived, or the declarant's faulty reporting (due to insincerity or ambiguous language) of what was remembered. *See Williamson v. United States,* —— U.S. ——, ——, 114 S.Ct. 2431, 2434, 129 L.Ed.2d 476 (1994); Laurence H. Tribe, *Triangulating Hearsay,* 87 Harv.L.Rev. 957 (1974); *McCormick on Evidence* § 245 (John W. Strong ed., 4th ed. 1992). Because of these weaknesses, the hearsay rule provides that an out-of-court statement ordinarily should not be admitted as evidence of the truth of what was asserted. These weaknesses, however, are absent when the statement is not offered for the truth of the matter asserted. The perception, memory, sincerity, and articulateness of the person making the statement are irrelevant to the issue of whether the statement was made.

■ When a statement is offered into evidence solely to prove that the statement was made, the statement can be thought of as a verbal act. Proving that one accused of fraud made a particular statement (which other evidence proves to be false) is conceptually the same as proving that a robber was carrying a gun. At a trial of the alleged accomplice of a robber (or swindler), the defendant may wish to question the robber about why the gun was pointed at the teller (or question why the swindler said that the ring was made of pure gold), but the reason for that wish is not because of any inherent unreliability in the evidence that the robber carried the gun (or that the swindler made the statement). There is no more reason to require that proof of the statement's being made come solely from the trial testimony of the person uttering the statement than there is reason to require that proof of the robber's

carrying a gun come solely from the robber's trial testimony. The hearsay rule is not a best-evidence rule stating that only the declarant should be permitted to testify as to what the declarant said; other real or testimonial evidence can be used to establish that fact.

Defendant argues that *State v. Brooks,* 103 Idaho 892, 655 P.2d 99, 107–08 (Ct.App.1982), supports his contention. We disagree. In that case the witness at trial testified that two others (the declarants) approached him and said that they had a plan to get some money. *Id.* 655 P.2d at 107. To the extent that the declarants' assertion was offered to prove that the declarants actually had a plan, the statement was hearsay. *Id.* at 108. We find nothing in *Brooks* to contradict what we say here. If, however, we are misreading *Brooks,* and *Brooks* actually says that statements constituting the crime itself are hearsay even when they are offered for no purpose other than to prove that they were uttered, then *Brooks* is simply incorrect. *See United States v. Inadi,* 475 U.S. 387, 398 n. 11, 106 S.Ct. 1121, 1128 n. 11, 89 L.Ed.2d 390 (1986).

■ Finally, having determined that the evidence of what happened at the Board meeting did not constitute hearsay, we can readily dispose of Defendant's contention that its rights under the confrontation clause were violated. The purpose of the confrontation clause in this context is to protect the defendant from the use of a statement that is unreliable and should be subject to cross-examination at trial. *See generally id.* at 392–98, 106 S.Ct. at 1124–28. Although evidence admissible under an exception to the hearsay rule may not satisfy the requirements of the confrontation clause, *see id.* at 393 n. 5, 106 S.Ct. at 1125 n. 5, evidence that is not hearsay is not a problem. "[A]dmission of nonhearsay raises no Confrontation Clause concerns. Cross-examination regarding . . . statements [not offered to prove the truth of the matters asserted] would contrib-

ute nothing to Confrontation Clause interests." *Id.* at 398 n. 11, 106 S.Ct. at 1128 n. 11 (internal quotation marks and citation omitted).[2] Thus, the evidence of what happened at the Board meeting did not violate the confrontation clause. *See State v. Apodaca,* 118 N.M. 762, 771–72, 887 P.2d 756, 765–66 (N.M.1994).

## II. FAILURE TO QUASH THE INDICTMENT

■ The indictments against Defendant and Armijo were handed down by the same grand jury at the same time. The trials on the two indictments, however, were severed, with Defendant's trial being set first. After Defendant was tried and convicted, Armijo successfully moved in district court to quash the grand jury indictment against him. The court dismissed the indictment on the ground that the State failed to comply with NMSA 1978, Section 31–6–11(B) (Repl.Pamp.1984), which, roughly speaking, requires that the prosecutor present the grand jury with evidence directly negating a defendant's guilt. *See Buzbee v. Donnelly,* 96 N.M. 692, 634 P.2d 1244 (1981). Defendant contends that the same ground for dismissing the indictment against Armijo also applies to the indictment upon which it was convicted. Ironically, the chief evidence that Defendant claims should have been presented to the grand jury is the tape recording of the June 17, 1991, Board meeting—the same recording whose admission at trial, according to Defendant, constituted reversible error.

We need not dwell on the particulars of the district court's reasons for dismissing the indictment against Armijo. In *Armijo* we found those reasons unpersuasive and reversed the dismissal of the indictment against Armijo.

■ Moreover, even if our decision in *Armijo* were in error, we would not dismiss the indictment against Defendant. Defendant, unlike Armijo, never sought dismissal of the

---

**2.** The definition of hearsay in SCRA 11–801 is not identical with the meaning of the term "hearsay" in the *Inadi* footnote (for example, SCRA 11–801(D)(2)(e) excludes statements by co-conspirators from the definition of hearsay, while *Inadi* considers some such statements to be hear-

say, 475 U.S. at 398 n. 11, 106 S.Ct. at 1128 n. 11), but the Supreme Court's definition of hearsay undoubtedly excludes statements that are not offered to prove the truth of the matter asserted. *See id.*

indictment by the district court. The general rule is that we will not review a matter that was not preserved in the district court. *See* SCRA 1986, 12–216(A) (Cum.Supp.1994). Defendant contends that his claim comes within the exception to the general rule for questions involving fundamental error. *See* SCRA 12–216(B)(2). We disagree. The doctrine of fundamental error should be applied sparingly, to prevent miscarriages of justice. *See State v. Clark,* 108 N.M. 288, 301, 772 P.2d 322, 335, *cert. denied,* 493 U.S. 923, 110 S.Ct. 291, 107 L.Ed.2d 271 (1989), *overruled on other grounds by State v. Henderson,* 109 N.M. 655, 664, 789 P.2d 603, 612 (1990). Any error that may have been made by the State in its presentation to the grand jury did not rise to that level. Defendant was convicted at a trial whose fairness was not tainted by any error in the grand jury proceedings. *Cf. United States v. Yost,* 24 F.3d 99, 102 (10th Cir.1994) (only in rare circumstances will indictment be dismissed following a conviction). We see no fundamental error in this case.

### III. DISMISSAL OF BRIBERY CHARGE

■ Defendant's third contention on appeal is that the bribery charge should have been dismissed because the portion of the bribery statute relied upon in the indictment does not govern gifts to one in Armijo's position. The bribery statute, Section 30–24–1, states as follows:

Bribery of public officer or public employee consists of any person giving or offering to give, directly or indirectly, anything of value to any public officer or public employee, with intent to induce or influence such public officer or public employee to:

A. give or render any official opinion, judgment or decree;

B. be more favorable to one party than to the other in any cause, action, suit, election, appointment, matter or thing pending or to be brought before such person;

C. procure him to vote or withhold his vote on any question, matter or proceeding which is then or may thereafter be pending, and which may by law come or be brought before him in his public capacity;

D. execute any of the powers in him vested; or

E. perform any public duty otherwise than as required by law, or to delay in or omit to perform any public duty required of him by law.

Whoever commits bribery of public officer or public employee is guilty of a third degree felony.

The indictment accused Defendant of violating Subsection D. Thus, Defendant was charged with giving a gift to Armijo with the intent to induce or influence him to "execute any of the powers in him vested."

Defendant contends that it could not have violated the subsection because Armijo "had no powers vested by law or executive regulation as Executive Director [of the Insurance Authority or the Retirement Authority.]" Defendant relies on *State v. Quinn,* 35 N.M. 62, 290 P. 786 (1930). But that opinion is not in point. *Quinn,* interpreting the predecessor to Section 30–24–1, dismissed a bribery charge against a highway department equipment engineer who had allegedly received a bribe to purchase trucks from a particular dealer. The Court held that the defendant could not be prosecuted under the statute because he did not hold state office and the statute did not apply to state employees. The decision is irrelevant to the present prosecution because the statute has since been broadened to include bribery of public employees as well as public officers. We need not determine whether Armijo was a public officer. He was indisputably a public employee if he was not a public officer.

■ We reject the view that the word "vested" in Section 30–24–1(D) means "specifically granted by statute or regulation." The clear import of the bribery statute is to prevent improper influences on public employees in the performance of their jobs. Defendant's construction of the statute could create a huge gap in the statute's coverage. Although we should not read into a statute language that is not there, *Dona Ana Sav. & Loan Ass'n v. Dofflemeyer,* 115 N.M. 590, 594, 855 P.2d 1054, 1058 (1993), we should avoid adopting a strained interpretation of

statutory language that would lead to consequences patently contrary to the statutory purpose. "A criminal statute must be interpreted in light of the harm or evil it seeks to prevent." *State v. Ogden*, 118 N.M. 234, 244, 880 P.2d 845, 855, *cert. denied*, —— U.S.——, 115 S.Ct. 336, 130 L.Ed.2d 294 (1994).

For a natural reading of the statutory language that is compatible with the statutory purpose, we need only turn to a recent decision of our Supreme Court. The issue in *Ogden* was whether the defendant could be subject to the death penalty if convicted of first-degree murder. The death penalty can be imposed in New Mexico only when an aggravating circumstance is present. One aggravating circumstance is that "the victim was a peace officer who was acting in the lawful discharge of an official duty when he was murdered." NMSA 1978, Section 31–20A–5(A) (Repl.Pamp.1994). The victim in the case was a community service officer (CSO). Our Supreme Court determined that a CSO is a "peace officer" within the meaning of the capital sentencing provision. The Court looked to the definition of "peace officer" in NMSA 1978, Section 31–1–2(F) (Repl. Pamp.1984), which states that a peace officer is a "full-time salaried officer who by virtue of his office or public ·employment is vested by law with the duty to maintain the public peace." The Court wrote:

> In the Section 31–1–2 definition, "by virtue of their office" grammatically modifies "are vested by law." This shows the fallacy of the district court's conclusion that "vested by law" requires formal, specific legislative action. Under this definition, the fact that CSOs hold their public employment is what vests them by law with the duty to maintain public order. There is no need for specific legislation stating that the CSOs are vested by law to maintain public order. Such a judicial construction employs an artificial and unduly narrow definition of the term "vested by law," and it incorrectly deprives the legislature of the ability to enact broad, general statutes. *Instead, "vested by law" should be read to mean "empowered by the sovereign authority of the government." This interpretation is much more natural.*

*Ogden*, 118 N.M. at 245, 880 P.2d at 856 (emphasis added).

Although the statutory language and the context in *Ogden* are not identical with those present in this case, the natural meaning of "vested" is the same. The improper acts alleged against Armijo were ones that he could perform because of his employment by the sovereign authority of the state. If a public employee takes a bribe to execute powers possessed by virtue of holding public employment, Section 30–24–1(D) is violated. We therefore reject Defendant's ground for dismissing the bribery conviction.

## IV. SUFFICIENCY OF THE EVIDENCE OF GUILT

█ Finally, Defendant makes two claims regarding the sufficiency of the evidence of its guilt. First, it claims that "absent the tape recorded statements, there is no evidence that [Defendant] committed fraud at the June 17, 1991 Board meeting." Having ruled that the tape recording of the meeting was properly admitted into evidence, we have eliminated the predicate for this claim. Defendant does not contend that the evidence admitted at trial was insufficient to establish fraud.

Second, Defendant claims that its conviction for bribery must be set aside because the jury that convicted it also acquitted its employee, Allen Pufahl, who was charged with the same bribery. Defendant contends that "there is no evidence that anyone else representing [Defendant] acted or intended to bribe MR. ARMIJO."

We are not convinced that the conviction of Defendant was inconsistent with the acquittal of Pufahl. The alleged bribe was an expensive party for Armijo arranged by Pufahl. The jury may have viewed Pufahl as a mere subordinate carrying out instructions from his superiors without a full understanding of the illicit purpose of the party.

In any event, we will not set aside a verdict solely on the ground that another verdict by the same jury might appear inconsistent. In *State v. Armijo*, 35 N.M. 533, 539, 2 P.2d 1075, 1078 (1931), our Supreme Court wrote:

There is no more reason for holding ... that an inconsistency destroys the verdict of conviction, than for holding that it destroys the verdict of acquittal.... The one verdict standing alone is good. · It should not be overcome by another verdict over which we have no control, cannot appraise, and which may have been actuated by any one of a dozen reasons which, if fathomed, would not detract from the former.... Should we here conclude otherwise, verdicts of guilty, however convincing the evidence, must hereafter yield to contemporaneous verdicts of acquittal, however irrational.

*Accord State v. Padilla,* 86 N.M. 282, 284, 523 P.2d 17, 19 (Ct.App.), *cert. denied,* 86 N.M. 281, 523 P.2d 16 (1974); *State v. Leyba,* 80 N.M. 190, 195, 453 P.2d 211, 216 (Ct.App.), *cert. denied,* 80 N.M. 198, 453 P.2d 219 (1969).

## V. CONCLUSION

For the above reasons, we affirm Defendant's conviction.

**IT IS SO ORDERED.**

BLACK and FLORES, JJ., concur.