This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37243**

**STATE OF NEW MEXICO,**

 Plaintiff-Appellee,

v.

**CHRISTOPHER HEH,**

 Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Cristina T. Jaramillo, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Jane A. Bernstein, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Caitlin C.M. Smith, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**HENDERSON, Judge.**

**{1}** The opinion filed January 6, 2021, is hereby withdrawn, and this opinion is substituted in its place. A jury convicted Defendant Christopher Heh of possession of a stolen motor vehicle and possession of burglary tools. On appeal, Defendant advances several arguments: (1) the State improperly solicited testimony regarding his post-arrest silence; (2) there was insufficient foundation for the admission of surveillance video evidence; (3) his conviction for possession of burglary tools is not supported by sufficient evidence; (4) failure to instruct the jury on the definition of burglary constituted

fundamental error; and (5) the district court engaged in improper commentary during voir dire. We hold that Defendant's Fifth Amendment right against self-incrimination was violated by the State's improper solicitation of testimony regarding his post-arrest silence, and that Defendant's conviction for possession of burglary tools is not supported by sufficient evidence. We therefore reverse and remand. Because we reverse on these grounds, we need not reach Defendant's remaining arguments. However, we exercise our discretion to address Defendant's argument regarding the improper admission of the surveillance video as it is likely to become an issue on remand.

**BACKGROUND**

**{2}**     Albuquerque Police Department (APD) Officer Tavish Barnhill was dispatched to the scene of a single-vehicle car accident. When he arrived, he discovered a truck caught in the median dividing the roadway. Officer Barnhill learned that the truck had been reported stolen and that a witness identified Defendant as the possible driver of the truck. He detained Defendant on the scene.

**{3}**     No individual at the scene witnessed Defendant operating the truck before it became caught in the median. However, Officer Barnhill obtained surveillance footage taken from a nearby gas station that appeared to show Defendant exiting the truck at the gas station and the truck rolling away towards the roadway shortly thereafter. A screwdriver was found in a cup holder in the truck. Defendant was transported to an APD substation for questioning by Detective David Taylor.

**{4}**     A grand jury indicted Defendant for, among other charges,[1] one count of possession of a stolen motor vehicle, contrary to NMSA 1978, Section 30-16D-4(A) (2009), and one count of possession of burglary tools, contrary to NMSA 1978, Section 30-16-5 (1963). At trial, both Officer Barnhill and Detective Taylor were called as witnesses by the State. The State introduced the surveillance video from the gas station through Officer Barnhill. Over Defendant's objections, the district court admitted the video into evidence, finding that Officer Barnhill could sufficiently authenticate the video, although he did not personally observe the events the video portrayed and was unfamiliar with the gas station's surveillance video system.[2]

**{5}**     Detective Taylor was the final witness to testify. The State asked Detective Taylor a series of questions about what he did at the substation after transporting Defendant there. After asking Detective Taylor if Defendant was present at the substation and to identify Defendant, the prosecutor again asked him what occurred at the substation to which he replied, "I attempted to interview [Defendant]." Defense counsel asked to approach the bench, and the following discussion ensued:

---

1The other charges were dismissed prior to trial.
2This district court ruling was consistent with its earlier ruling on the same issue in this case, which was raised pretrial by motion in limine and heard at a motion hearing.

| | |
|---|---|
| Defense Counsel: | Your Honor I'm going to object on the basis of an improper commentary on [Defendant]'s right to remain silent. He refused to give a statement, he was in custody, he's under arrest. I think if they're going to ask him that he chose not to. . . . |
| Court: | Are you going to ask him about any statements? |
| Prosecutor: | I'm going to ask [Detective Taylor] if he asked if [Defendant] would give a statement and [Defendant] said "No. Anything I say will incriminate me further." So [Detective Taylor] stopped. |
| Court: | Ok . . . that won't come in. But I'm going to allow a little bit of leading in this way: "were you able to get a statement from [Defendant]" is the extent of it. |

**{6}**     Defense counsel repeated his objection and expressed concern that any testimony bearing on Defendant's right not to give a statement would allow the jury to infer a consciousness of guilt. The district court acknowledged the prejudicial nature of the testimony sought, but reasoned it was a "balancing act" and did not want the jury to believe that Detective Taylor did not ask Defendant to speak with him. In an attempt to mitigate the prejudice, the district court suggested defense counsel inquire on cross examination whether Defendant was read his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). The court then asked the parties to clarify the State's last question to Detective Taylor. Defense counsel, apparently confusing the State's last question to Detective Taylor with the question the district court said it would allow the State to ask, responded, "Were you able to get a statement? [Detective Taylor] said 'No.' " This misstatement went uncorrected by the State.

**{7}**     Contrary to the district court's instructions, the State did not limit its questioning of Detective Taylor and instead adopted the questions the court suggested defense counsel use on cross examination:

| | |
|---|---|
| Prosecutor: | Ok, so Detective Taylor, you just stated that . . . you were not able to get a statement from . . . [Defendant]? |
| Detective Taylor: | No. |
| Prosecutor: | Ok. And did you read him his *Miranda* rights?[3] |
| Detective Taylor: | I did not. |
| Prosecutor: | Why not? |

---

3At this point, Defendant had already been detained by Officer Barnhill at the scene of the accident and was transported to an APD substation. Officer Barnhill was not asked whether he gave Defendant his *Miranda* warnings, but he testified that while they did speak, he did not recall Defendant's statements. Though unclear from the record, for purposes of our analysis, we assume that Defendant had been given his *Miranda* warnings. *See State v. DeGraff*, 2006-NMSC-011, ¶ 13, 139 N.M. 211, 131 P.3d 61 (explaining that appellate courts may assume *Miranda* warnings were given when the record is silent as to that issue).

| Detective Taylor: | He did not wish to speak with me, so I didn't go any further. |

The jury convicted Defendant of both charges, and this appeal followed.

## DISCUSSION

### I.  Defendant's Fifth Amendment Right Against Self-Incrimination Was Violated

**{8}**  Defendant argues that his Fifth Amendment right against self-incrimination was violated based on the State's questioning of Detective Taylor that elicited testimony that he was unable to obtain a statement from Defendant. The State argues that Defendant "invited" this testimony and that any resulting error was harmless. For the reasons that follow, we agree with Defendant.

**{9}**  "No person . . . shall . . . be compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V. The Fifth Amendment prohibits comments from the prosecution before the jury on the silence of the accused. *See State v. Isiah*, 1989-NMSC-063, ¶ 10, 109 N.M 21, 781 P.2d 293, *overruled on other grounds by State v. Lucero*, 1993-NMSC-064, ¶ 13, 116 N.M. 450, 863 P.2d 1071. "Evidence of a defendant's post[-]arrest silence is generally inadmissible because the probative value is substantially outweighed by the potential for unfair prejudice." *State v. Garcia*, 1994-NMCA-147, ¶ 7, 118 N.M. 773, 887 P.2d 767.

**{10}**  "[W]e review de novo the legal question whether the prosecutor improperly commented on [the d]efendant's silence." *State v. Foster*, 1998-NMCA-163, ¶ 8, 126 N.M. 177, 967 P.2d 852. "[I]n cases in which a defendant has properly objected at trial, we review prosecutorial comment on silence to determine whether the error is harmless beyond a reasonable doubt." *State v. Gutierrez*, 2007-NMSC-033, ¶ 18, 142 N.M. 1, 162 P.3d 156. It is the State's burden to establish "that the constitutional error was harmless beyond a reasonable a doubt." *Id.* (internal quotation marks and citation omitted). Constitutional error can never be "harmless if there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Id.* (internal quotation marks and citation omitted).

**{11}**  "Our focus must remain squarely on assessing the likely impact of the error on the jury's verdict." *State v. Alvarez-Lopez*, 2004-NMSC-030, ¶ 32, 136 N.M. 309, 98 P.3d 699. "We take care not to focus our harmless error analysis exclusively on whether the trial record consisted of overwhelming evidence of the defendant's guilt, so as not to risk inadvertently concluding the constitutional error was harmless simply because there was substantial evidence to support the conviction." *Gutierrez*, 2007-NMSC-033, ¶ 18 (internal quotation marks and citation omitted). Consequently, "in a proper harmless error analysis, the appellate court defers to the jury verdict *only* when the [s]tate has established beyond a reasonable doubt that the jury verdict was not tainted by the constitutional error." *Alvarez-Lopez*, 2004-NMSC-030, ¶ 30. Finally, we "consider

whether the language used was manifestly intended to be or was of such a character that the jury would naturally and necessarily take it to be a comment on the accused's exercise of his or her right to remain silent." *DeGraff*, 2006-NMSC-011, ¶ 8 (internal quotation marks and citation omitted).

**{12}** We first examine the context in which the testimony concerning Defendant's silence was made. The State argues that because Detective Taylor was the eighth and final witness to appear after two days of evidence being presented, this testimony was harmless error given the amount of other evidence presented. We disagree. "[E]ven if [the] conviction *appears* inevitable, there is a point at which an error becomes too great to condone as a matter of constitutional integrity and prosecutorial deterrence. While the strength of the properly admitted evidence is a factor in evaluating the likely impact on the jury of the constitutional error, constitutional error cannot be deemed harmless simply because there is overwhelming evidence of defendant's guilt. Rather, we focus squarely on assessing the likely impact of the error on the jury's verdict." *Gutierrez*, 2007-NMSC-033, ¶ 18 (alteration, internal quotation marks, and citations omitted). The State attempts to diminish the importance of Detective Taylor's testimony by characterizing it as surplusage following numerous other prosecution witnesses. The prosecutor must have known that by having the last witness jurors would hear testify comment on Defendant's silence just prior to them retiring to deliberate, it would impact their decision regarding Defendant's guilt.

**{13}** Here, there is no question that the testimony elicited by the State was a direct comment on Defendant's right to remain silent. Generally, "[w]e . . . draw the line between those comments which can be directly attributed to the prosecutor and those comments incorporated within the testimony of a witness." *State v. Baca*, 1976-NMSC-015, ¶ 5, 89 N.M. 204, 549 P.2d 282. Had the commentary stopped after Detective Taylor testified that he "attempted to interview [Defendant,]" this case would fall neatly on the side of comments attributable only to the witness's testimony. However, in response to Defendant's objection, the State made clear that its intention was to elicit testimony regarding Defendant's invocation of his Fifth Amendment rights. *See DeGraff*, 2006-NMSC-011, ¶ 8 ("We evaluate the statement in context to determine the manifest intention that prompted the remarks as well as the natural and necessary impact upon the jury." (internal quotation marks and citation omitted)). Though the district court sought to limit the scope of the State's questioning on this point, any limitation was insufficient, as "New Mexico courts have long held a prosecutor is prohibited from commenting on a defendant's right to remain silent[.]" *State v. McDowell*, 2018-NMSC-008, ¶ 4, 411 P.3d 337; *see Foster*, 1998-NMCA-163, ¶ 9 (explaining "the general rule forbidding a prosecutor from commenting on a defendant's silence or introducing evidence of silence").

**{14}** Additionally, the State did not heed the district court's direction to limit its questioning solely to whether Detective Taylor was able to get a statement from Defendant. Instead, the State went further and adopted the questions the district court suggested defense counsel ask of Detective Taylor to mitigate the prejudicial impact of the testimony regarding Defendant's post-arrest silence. This resulted in testimony that

explicitly mentioned Defendant's invocation of his right to remain silent, and it is directly attributable to the State.

**{15}** The State asks this Court to conclude that this error was invited by Defendant because defense counsel misstated the last question asked of Detective Taylor by the State just prior to the bench conference. We cannot do so. It appears defense counsel's misstatement during the bench conference was premised on a mistaken belief that the district court inquired as to the question it had just ruled the State could ask Detective Taylor. This was not an invitation opening the door for the State to ask Detective Taylor about Defendant's invocation of his right not to provide a statement. Therefore, under such circumstances, we see no invited error. *See State v. Martinez*, 2008-NMCA-052, ¶ 15, 143 N.M. 773, 182 P.3d 154 (observing that "circumstances not caused or initiated by [the d]efendant" are not invited error); *State v. Foxen*, 2001-NMCA-061, ¶ 12, 130 N.M. 670, 29 P.3d 1071 (declining to hold that the defendant invited an error when "only a portion of the complete problem may have been 'invited[]' " by defense counsel and defense counsel's conduct was "simply the result of oversight or neglect").

**{16}** In sum, we cannot conclude that the State has demonstrated this error was harmless beyond a reasonable doubt. Detective Taylor's testimony was the last heard by the jury before it retired to deliberate, and the State has failed to convince us that there is no reasonable probability that his testimony on Defendant's exercise of his right to remain silent contributed to Defendant's convictions. Accordingly, we reverse on this ground.

## II.   The Evidence Was Insufficient to Support Defendant's Conviction for Possession of Burglary Tools

**{17}** Because we reverse on Fifth Amendment grounds, we must address Defendant's contention that insufficient evidence was presented to support his conviction for possession of burglary tools so as to avoid double jeopardy concerns on remand if Defendant is retried. *See State v. Consaul*, 2014-NMSC-030, ¶ 41, 332 P.3d 850 ("To avoid double jeopardy concerns, we review the evidence presented at the first trial to determine whether it was sufficient to warrant a second trial."); *State v. Gonzales*, 2020-NMCA-022, ¶ 22, 461 P.3d 920 (same). Defendant argues that because the State presented no evidence that the screwdriver used as the basis for the charge of possession of burglary tools was used to gain entry into the vehicle, the evidence supporting this conviction is insufficient. We agree.

**{18}** "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). "[W]e resolve all disputed facts in favor of the [s]tate, indulge all reasonable inferences in support of the verdict, and disregard all evidence and inferences to the contrary." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. "Although appellate courts are highly deferential to the jury's decisions, it is the independent responsibility of the

courts to ensure that the jury's decisions are supportable by evidence in the record, rather than mere guess or conjecture." *State v. Slade*, 2014-NMCA-088, ¶ 14, 331 P.3d 930 (internal quotation marks and citations omitted).

**{19}** "Burglary" is defined as "the unauthorized entry of any vehicle, watercraft, dwelling or other structure, movable or immovable, with the intent to commit any felony or theft therein." NMSA 1978, § 30-16-3 (1971). "[T]he entry is the harm sought to be prevented, as the crime is complete upon entry with the requisite intent." *State v. Office of Pub. Def. ex rel. Muqqddin*, 2012-NMSC-029, ¶ 60, 285 P.3d 622. "While intent to commit any theft or felony is an element of burglary, entry is the primary concern protected by the burglary statute." *State v. Ford*, 2019-NMCA-073, ¶ 13, 453 P.3d 471. "Burglary is a standalone crime and does not require the requisite intended crime be completed after entry." *Id.*

**{20}** To possess burglary tools, one must have "in the person's possession a device or instrumentality designed or commonly used for the commission of burglary and under circumstances evincing an intent to use the same in the commission of a burglary." Section 30-16-5. In *Ford*, this Court held that our Legislature intended to criminalize the use of tools while one commits, or intends to commit, a burglary, meaning that "it is at the moment of entry or prior to the entry that the use or intended use of burglary tools matters." 2019-NMCA-073, ¶ 14. Thus, to be convicted for possession of burglary tools, one must use, or intend to use, the tools to assist in making an unauthorized entry. *See id.*

**{21}** Here, the evidence established that a screwdriver was found in a cup holder in the truck. Detective Taylor testified that the ignition of the truck was damaged in such a way as to be started by a screwdriver like the one found in the truck. While the evidence also established that the locks to the truck were damaged, nothing in evidence indicated that this damage was caused by a screwdriver. Rather, the State proceeded only on the theory that Defendant used the screwdriver to *drive* the stolen truck, and presented no evidence that Defendant used the screwdriver to *enter* the truck. Because no evidence was presented that suggests Defendant possessed the screwdriver before he entered the truck or had the intent to use the screwdriver to gain entry into the truck, we conclude that insufficient evidence supports the conviction for possession of burglary tools and reverse this conviction. On remand, retrial on this charge is precluded. *See State v. Lizzol*, 2007-NMSC-024, ¶ 15, 141 N.M. 705, 160 P.3d 886 (stating that "a defendant may not be retried after the conviction is set aside because of insufficient evidence").

### III.  Insufficient Foundation Supported the Admission of the Surveillance Video

**{22}** Defendant argues that the State laid an improper foundation for the admission of the gas station surveillance video and that it should not have been admitted into evidence. Specifically, Defendant contends that because Officer Barnhill did not personally observe any of the events portrayed on the surveillance video and was unfamiliar with the gas station's surveillance video system, another witness was

necessary to authenticate the video. The State argues that this is a question of weight, rather than admissibility, that is properly reserved for the jury. We agree with Defendant and address this issue as it is likely to come up on remand.

**{23}** Generally, we review the district court's "admission of evidence for an abuse of discretion." *State v. Branch*, 2010-NMSC-042, ¶ 9, 148 N.M. 601, 241 P.3d 602, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110. An abuse of discretion occurs when the district court "exercises its discretion based on a misunderstanding of the law." *State v. Vigil*, 2014-NMCA-096, ¶ 20, 336 P.3d 380. "A misapprehension of the law upon which the court bases an otherwise discretionary evidentiary ruling is subject to de novo review." *State v. Martinez*, 2008-NMSC-060, ¶ 10, 145 N.M. 220, 195 P.3d 1232.

**{24}** Where no sponsoring witness can testify to the contents of photographic or videographic evidence based on personal observation, New Mexico courts follow the "silent witness" theory, under which the imagery portrayed "speaks for itself" but must be authenticated through witness testimony. *State v. Sweat*, 2017-NMCA-069, ¶ 21, 404 P.3d 20; *see State v. Henderson*, 1983-NMCA-094, ¶¶ 8, 11, 110 N.M. 260, 669 P.2d 736 ("A witness with knowledge must testify that the thing is what it purports to be."); *see also* Rule 11-901(A) NMRA ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.").

**{25}** In *Henderson*, we held that sufficient evidence of authentication was presented where "an officer in charge of the [ATM] machine" that generated images of the defendant testified "about the film developing procedure" and that she requested the film be developed from a specific date and time. 1983-NMCA-094, ¶ 12. Recently, in *State v. Imperial*, this Court held a surveillance video was properly authenticated where a store's "[a]sset [p]rotection [a]ssociate" testified that the video depicted the store location where she worked, the date and time information on the video was programmed remotely, local employees could not manipulate the surveillance system, the system operated twenty-four hours a day, the same system operated at the store for five years, and "she [was] able to download surveillance video from specific dates and times for up to ninety days." 2017-NMCA-040, ¶¶ 12, 31-32, 392 P.3d 658.

**{26}** Here, no employee(s) from the gas station were called to testify at trial about the gas station's surveillance system. Officer Barnhill testified that he observed the gas station employee(s) create a disc for him of the surveillance video purporting to show this event. Unlike the witnesses who authenticated similar evidence in *Henderson* and *Imperial*, Officer Barnhill could only testify about how he came to obtain a copy of the surveillance video. He could not testify regarding the operation of the surveillance system or the process for accessing and downloading surveillance videos, whether the video could be manipulated, and he was unable to name the employee(s) who downloaded the video and created the disc for him. Thus, we conclude that he was unable to properly authenticate the video, which denied Defendant a meaningful opportunity to cross-examine him on the operation and reliability of the surveillance

system. *See State v. Glen Slaughter & Assocs.*, 1994-NMCA-169, ¶ 5, 119 N.M. 219, 889 P.2d 254 (Noting that "[a] witness (who *is* subject to cross-examination) can identify the tape recording as one produced by a specific machine at a specific time and place and can allay concerns about tampering with the tape").

**{27}**   The State urges us to explicitly conclude that what has consistently served as sufficient foundation in our "silent witness" cases is not necessary to authenticate video recordings. Specifically, the State asks us to hold that as long as a minimal threshold showing of authenticity is shown, "silent witness" video recordings should be admissible, and the questions of reliability and accuracy should be left to the jury. The State cites to case law from other jurisdictions to support its argument; however, each case cited is distinguishable from the case at hand. Thus, in the absence of a compelling reason, we will not depart from our precedent governing the authentication of surveillance video evidence. *See State v. Gonzales*, 1990-NMCA-040, ¶ 30, 110 N.M. 218, 794 P.2d 361 ("Until we are faced with a case in which there is a reason to depart from a precedent, we will continue to apply it."). Therefore, under *Henderson* and our precedent governing authentication of evidence such as the surveillance video in this case, we conclude that there was an insufficient foundation to admit the video into evidence.

**CONCLUSION**

**{28}**   We reverse Defendant's convictions and remand this case to the district court with instructions to vacate Defendant's conviction for possession of burglary tools and for further proceedings consistent with this opinion.

**{29}   IT IS SO ORDERED.**

**SHAMMARA H. HENDERSON, Judge**

**WE CONCUR:**

**JULIE J. VARGAS, Judge**

**MEGAN P. DUFFY, Judge**