Certiorari Denied, March 9, 2017, No. S-1-SC-36300

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number:  2017-NMCA-040

Filing Date:  February 14, 2017

Docket No. 34,277

STATE OF NEW MEXICO,

Plaintiff-Appellee,

v.

CHRISTINE IMPERIAL,

Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Brett R. Loveless, District Judge

Hector H. Balderas, Attorney General
Santa Fe, NM
Jacqueline R. Medina, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Sergio Viscoli, Appellate Defender
B. Douglas Wood III, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**WECHSLER, Judge.**

**{1}** Defendant Christine Imperial was convicted of three counts of forgery, contrary to NMSA 1978, Section 30-16-10 (2006), and three counts of identity theft, contrary to NMSA 1978, Section 30-16-24.1 (2009). On appeal, Defendant raises two primary claims: (1) that

the district court erred in admitting certain testimony and evidence related to the transactions at issue in the case and (2) that the district court erred in admitting surveillance videos from Wal-Mart's security system. Because we conclude that the district court's rulings were not erroneous, we affirm.

## BACKGROUND

**{2}** In September 2010, Albuquerque Police Department Detective Tyrone Chambers began investigating allegations of check fraud at a Wal-Mart in Albuquerque, New Mexico. As part of his investigation, Detective Chambers contacted Certegy, a company that performs check verification for retail businesses, including Wal-Mart. Certegy fraud investigator Christopher Jacobson provided Detective Chambers with information related to certain allegedly fraudulent transactions, which Detective Chambers incorporated into his investigation. This information included the dates, times, check numbers, account numbers, routing numbers, social security numbers, names, and store locations associated with the allegedly fraudulent transactions.

**{3}** After isolating certain transactions suspected to involve Defendant, Detective Chambers contacted the Wal-Mart located on Wyoming Boulevard in northeast Albuquerque to request surveillance videos taken at the store's money center. Detective Chambers provided dates and times of the allegedly fraudulent transactions to Wal-Mart's loss prevention department. He received surveillance videos depicting transactions on August 27, 2010, August 28, 2010, and September 6, 2010. Detective Chambers identified Defendant in these surveillance videos by reference to a photograph in a police database. Each surveillance video showed Defendant present a check to a Wal-Mart employee. In each instance, the employee attempted to process the transaction and returned the check to Defendant. Each surveillance video also contained a computer-generated graphic indicating the date and time of the transaction.

**{4}** Defendant was indicted for forgery and identity theft in December 2010. On May 3, 2011, the State filed a witness list that included Jacobson. On June 25, 2013, the State filed an amended witness list that again included Jacobson.

**{5}** In October 2013, the State provided discovery to defense counsel that included Detective Chambers' police report. Detective Chambers' police report contained a thirty-six page spreadsheet created by Jacobson that detailed numerous allegedly fraudulent transactions involving Defendant and other individuals. At trial, defense counsel acknowledged not "understand[ing] the significance" of the spreadsheet.

**{6}** On March 17, 2014, the State filed a second amended witness list noticing "Christopher Jacobson/designee, c/o Certegy Check Systems." One week later, Defendant filed a motion for a continuance based on a general lack of preparedness for trial. The district court denied this motion.

2

**{7}**     Defendant did not subpoena Jacobson to a pre-trial interview. Nor did Defendant respond to requests for dates for pre-trial interviews. At some unknown date after the March 26, 2014 scheduling conference, Jacobson determined that he would be unavailable to appear at the trial setting. Jacobson did not appear for his scheduled interview on April 4, 2014.

**{8}**     Due to Jacobson's unavailability, the State substituted another Certegy fraud investigator, Michael Baracz, as a witness the week before trial. The State noticed a pre-trial interview with Baracz and conducted this interview by telephone on April 14, 2014. Defense counsel declined to interview this "new witness[]." During this interview, Baracz informed the State that he had generated a new spreadsheet depicting only transactions appearing to involve Defendant. The State sent this spreadsheet to defense counsel by email the next day.

**{9}**     On the first day of the trial, April 16, 2014, Defendant filed a motion in limine to exclude: (1) Baracz as a witness, (2) the spreadsheet Baracz generated, and (3) surveillance videos from Wal-Mart. The district court ruled that Baracz was a records custodian and did not need to be specifically disclosed. The district court also stated that Defendant could interview Baracz prior to his scheduled testimony the next day.

**{10}**     Outside the presence of the jury, Baracz testified as to Certegy's role in verifying checks for Wal-Mart, including a step-by-step description of a transaction and the process by which transactional data is generated. Baracz also testified that he did not consult the spreadsheet originally generated by Jacobson but instead generated a new spreadsheet depicting only transactions appearing to involve Defendant. Baracz's spreadsheet did not contain any new information not included in Jacobson's spreadsheet. This spreadsheet was introduced as State's Exhibit Three and contained thirty-seven transaction records. Baracz also provided a second spreadsheet, State's Exhibit One, which was a redacted version of State's Exhibit Three and contained only six transaction records. Over objection, the district court admitted State's Exhibits One and Three (the Exhibits), ruling that: (1) the information in the spreadsheets "was provided to counsel for the defense in the initial discovery," (2) the transaction records are business records under Rule 11-803(6) NMRA, and (3) the transaction records are non-testimonial. Only State's Exhibit One was published to the jury.

**{11}**     Baracz's testimony before the jury centered on the process Certegy undertakes to verify a transaction originating at a Wal-Mart money center. As part of this testimony, Baracz discussed the origin, the data storage process, and the meaning of the data included in the Exhibits.

**{12}**     Wal-Mart Asset Protection Associate Kesha Pendleton also testified as a foundational witness outside the presence of the jury. The purpose of her testimony was to authenticate the surveillance videos obtained by Detective Chambers. Pendleton testified that (1) the transactions depicted on the surveillance videos at issue occurred at the money center inside the Wal-Mart at which she is employed, (2) the surveillance system operates twenty-four hours a day and cannot be manipulated by local employees, (3) the same surveillance system has been in place for at least five years, (4) the surveillance system allows local employees

3

to download surveillance videos taken at specific dates and times, and (5) the computer-generated graphic indicating the date and time is programmed remotely. Following foundational testimony by Pendleton and Detective Chambers, the district court received the surveillance videos in evidence over Defendant's objection.

**{13}** Defendant was convicted on three counts of forgery and three counts of identity theft. This appeal resulted.

## ADMISSIBILITY OF EVIDENCE

**{14}** The district court allowed the testimony of Baracz as a records custodian and received in evidence the Exhibits as business records under Rule 11-803(6). On appeal, Defendant argues that this ruling was erroneous, both under our rules of evidence and as a violation of Defendant's right to confront witnesses against her. Defendant also argues that insufficient evidence supported the authentication of, and chain of custody related to, the Wal-Mart surveillance videos. We review a district court's admission of evidence for an abuse of discretion. *State v. Cofer*, 2011-NMCA-085, ¶ 7, 150 N.M. 483, 261 P.3d 1115. A court abuses its discretion when its "ruling is clearly against the logic and effect of the facts and circumstances of the case." *Id.* (internal quotation marks and citation omitted).

### Alleged Discovery Violations

**{15}** Defendant argues that the late disclosure of Baracz and the Exhibits (1) constituted a violation of Defendant's right to confront witnesses against her and (2) should have resulted in sanctions for discovery violations. A Confrontation Clause violation occurs when a defendant is unable to confront testimony against the defendant. *See State v. Ortega*, 2014-NMSC-017, ¶ 18, 327 P.3d 1076 ("This clause bars the admission of out-of-court statements that are both testimonial and offered to prove the truth of the matter asserted, unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant." (alteration, omission, internal quotation marks, and citation omitted)). Baracz testified at trial and was cross-examined by Defendant. We therefore address Defendant's arguments on appeal in the context of our rules of criminal procedure—specifically Rule 5-501 NMRA (2007) and Rule 5-505 NMRA.

**{16}** Rule 5-501(A)(5) provides that "the state shall disclose . . . a written list . . . of all witnesses which the prosecutor intends to call at the trial[.]" Rule 5-505(A) creates an ongoing duty to "promptly give written notice to the other party or the party's attorney of the existence of the additional material or witnesses." However, to justify sanctions for the late disclosure of witnesses or documents, a defendant must demonstrate that he or she "was prejudiced by the untimely disclosure." *State v. Duarte*, 2007-NMCA-012, ¶¶ 15, 19, 140 N.M. 930, 149 P.3d 1027 (internal quotation marks and citation omitted). "[P]rejudice does not accrue unless the evidence is material and the disclosure is so late that it undermines the defendant's preparation for trial." *State v. Harper*, 2011-NMSC-044, ¶ 20, 150 N.M. 745, 266 P.3d 25. Evidence is material if "there is a reasonable probability that, had the evidence

been disclosed to the defense, the result of the proceeding would have been different." *Duarte*, 2007-NMCA-012, ¶ 15 (internal quotation marks and citation omitted). "Prejudice must be more than speculative; the party claiming prejudice must prove prejudice—it is not enough to simply assert prejudice." *Harper*, 2011-NMSC-044, ¶ 16.

**{17}** With respect to the late disclosure of Baracz, Baracz and Jacobson were functionally equivalent for purposes of determining the evidentiary significance of the discovery materials. *See, e.g.*, *Parks v. State*, 348 S.E.2d 481, 482 (Ga. Ct. App. 1986) ("No harm is shown to have resulted from the substitution of one records custodian for another[.]"). Both are fraud investigators for Certegy. Both conducted database searches for transactions appearing to involve Defendant. Neither was in a position to offer substantive testimony that Defendant herself had violated or attempted to violate the law. Jacobson appeared on various iterations of the State's witness list for years and was never subpoenaed for an interview by Defendant. Under these circumstances, the substitution of one records custodian for another does not constitute a late disclosure that "undermines the defendant's preparation for trial." *Harper*, 2011-NMSC-044, ¶ 20. Baracz's spreadsheet did not contain any new information not included in Jacobson's spreadsheet. Furthermore, Defendant was not deprived of the opportunity to conduct an interview. Baracz was first made available for a telephonic interview on April 14, 2014, and Defendant declined to participate. Defendant then interviewed Baracz on the morning of April 17, 2014. We cannot discern, and Defendant does not specifically assert in her appellate briefing, how the timing of her interview with Baracz prejudiced her defense. *See id.* ¶¶ 22, 24 (holding that the defendant did not demonstrate prejudice when he had the opportunity to interview late-disclosed witnesses prior to trial); *State v. McDaniel*, 2004-NMCA-022, ¶ 14, 135 N.M. 84, 84 P.3d 701 (holding that prejudice is demonstrated by a showing that the defendant's "cross-examination would have been improved by an earlier disclosure or [that the defendant] would have prepared differently for trial"). The key question—left unanswered in Defendant's briefing—is how Defendant would have prepared for trial differently in light of the substitute witness.

**{18}** With respect to the Exhibits, Defendant was in possession of all the information contained in them far in advance of trial. The reformatting of previously disclosed discovery materials for trial purposes does not constitute a new, and therefore late, disclosure. *Cf. Harper*, 2011-NMSC-044, ¶ 20 ("[W]hen . . . the defendant has knowledge of the contents of the unproduced evidence, [a] determination of prejudice is more elusive."). Nor does the redaction of irrelevant information from the initially provided discovery materials result in prejudice to Defendant's defense. Defendant claims that an alternate presentation of the data "stood to affect . . . trial counsel's cross-examination." The redaction of irrelevant information, however, would, if anything, simplify Defendant's cross-examination of Baracz if, as contended in her briefing, she "was prepared to cross-examine a witness from the same company who had compiled a separate exhibit."

**{19}** Defendant additionally argues, citing *Harper*, that the district court erred by failing to consider lesser sanctions after denying her motion to exclude Baracz and the Exhibits. However, our review of Defendant's briefing and the record proper does not indicate that

5

Defendant argued for lesser sanctions at trial. To preserve an issue for appeal, a party must allege error and invoke a ruling from the district court. *State v. Lucero*, 1993-NMSC-064, ¶ 11, 116 N.M. 450, 863 P.2d 1071. In the absence of preservation, we decline to consider the appropriateness of lesser sanctions.

**{20}**    Defendant has not demonstrated that she was prejudiced by the district court's admission of Baracz and the Exhibits. As a result, we find no abuse of discretion in these evidentiary rulings.

**Alleged Hearsay Evidence**

**{21}**    Defendant further argues that the Exhibits constitute inadmissible hearsay. We review a district court's application of exceptions to the rule against hearsay for an abuse of discretion. *State v. Benavidez*, 1999-NMSC-041, ¶ 4, 128 N.M. 261, 992 P.2d 274. Hearsay is an out-of-court statement offered for the truth of the matter asserted and is inadmissible at trial except as allowed by exclusions or enumerated exceptions. *State v. Largo*, 2012-NMSC-015, ¶ 24, 278 P.3d 532; Rule 11-801(C) NMRA (defining "hearsay" as "a statement that (1) the declarant does not make while testifying at the current trial or hearing, and (2) a party offers in evidence to prove the truth of the matter asserted in the statement"). Rule 11-803(6) is such an exception and provides for the admission of:

> A record of an act, event, condition, opinion, or diagnosis if
>
> (a)    the record was made at or near the time by—or from information transmitted by—someone with knowledge,
>
> (b)    the record was kept in the course of a regularly conducted activity of a business, institution, organization, occupation, or calling, whether or not for profit,
>
> (c)    making the record was a regular practice of that activity, and
>
> (d)    all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 11-902(11) or (12) NMRA or with a statute permitting certification.

Rule 11-803(6) is commonly referred to as the "business records exception." *Cofer*, 2011-NMCA-085, ¶ 9. At issue in this case is whether instantaneously recorded data related to retail transactions, which are later compiled for utilization in criminal investigations and at trial, fall within the Rule 11-803(6) requirements for admissibility.

**{22}**    The Exhibits are distillations of data related to literally millions of transactions conducted at Wal-Mart money centers around the country. The data contained within the Exhibits were recorded in real time, thus satisfying the requirement of Rule 11-803(6)(a),

6

and were kept for every Wal-Mart money center transaction in the regular course of business, thus satisfying the requirements of Rule 11-803(6)(b) and (c).

**{23}** Defendant argues that, because the Exhibits were "assembled" as part of the case against her, they cannot be admitted into evidence under the business record exception. We disagree.

**{24}** In *State ex rel. Electric Supply Co. v. Kitchens Constructions, Inc.*, our Supreme Court conducted a similar analysis and held that the computer-generated records at issue were admissible. In that case, the plaintiff sued for recovery of $61,124.53—the value of materials provided to a subcontractor on a state construction project. 1988-NMSC-013, ¶ 1, 106 N.M. 753, 750 P.2d 114. At trial, the plaintiff introduced "unpaid computerized invoices" for materials provided to subcontractors as evidence of the amount due. *Id.* ¶ 3. The defendant argued that the plaintiff's invoices were inadmissible "because the invoices were produced especially for this litigation[.]" *Id.* ¶ 4. In finding the invoices admissible, our Supreme Court held,

> [U]nder Rule 803[,] computer data compilations may be construed as business records themselves, and they should be treated as any other record of regularly conducted activity. Although a computer printout . . . is made after completion of all regular dealings with a party, the printout is admissible if its contents were stored and compiled at the time of the underlying transactions.

*Id.* ¶ 10 (citation omitted).

**{25}** *Kitchens* is closely analogous to this case. Certegy vets each attempt to cash a check at a Wal-Mart money center in real time. It instantaneously stores a record of each transaction in a database and retains it for a minimum of seven years. As a result, each line of data, which is "stored and compiled at the time of the underlying transactions[,]" is its own individual business record and is admissible under Rule 11-803(6). *Kitchens*, 1988-NMSC-013, ¶ 10. That the data are not instantaneously compiled into a form that is convenient for evidentiary purposes is of no consequence. The rules of evidence allow for the compilation of otherwise admissible business records for the purpose of prosecution or civil litigation. *See, e.g.*, *United States v. Keck*, 643 F.3d 789, 797 (10th Cir. 2011) ("In the context of electronically-stored data, the business record is the datum itself, not the format in which it is printed out for trial or other purposes.").

**{26}** Because each line of data contained within the Exhibits constitutes an admissible business record under Rule 11-803(6), the district court's admission did not constitute an abuse of discretion. Given this conclusion, we decline to explore Defendant's argument that the Exhibits are instead summaries subject to the requirements of Rule 11-1006 NMRA.

**Authentication of Evidence**

7

**{27}** The Wal-Mart surveillance videos included computer-generated graphics indicating the date and time of the transactions. Defendant argues that Pendleton's testimony did not sufficiently describe the process by which the date and time stamps are generated and that, therefore, the surveillance videos were not properly authenticated.

**{28}** Evidence is properly authenticated by the production of foundational evidence "sufficient to support a finding that the item is what the proponent claims it is." Rule 11-901(A) NMRA. With respect to the question of authentication, the computer-generated graphics indicating the date and time of the transactions are not subject to greater scrutiny than the other content observed in the surveillance video.

**{29}** In *State v. Henderson*, this Court articulated a low bar for authentication of photographic evidence created through automated processes. 1983-NMCA-094, 100 N.M. 260, 669 P.2d 736. Such photographic evidence is admissible under the "silent witness" theory, which requires that the evidence be authenticated by the testimony of "a witness with knowledge . . . that the thing is what it purports to be." *Id.* ¶¶ 8, 11.

**{30}** In *Henderson*, the defendant conducted a transaction at an automated teller machine on the same date as the alleged crime. *Id.* ¶ 7. The automated teller machine was programmed to "make[] written records of all transactions, and . . . take[] a picture of the person making the transaction." *Id.* At trial, the state introduced a photograph of the defendant taken by the automated teller machine. *Id.* ¶ 12. The purpose of this evidence was to establish, consistent with other physical evidence, that the defendant was wearing certain clothing on the date of the alleged crime. *Id.* ¶ 7. A foundational witness testified as to the film developing procedure "and that she had requested that the film for August 9, 1982 at 10:22 a.m. be developed."[1] *Id.* ¶ 12. This Court concluded that such testimony was sufficient to authenticate the photograph under Rule 11-901. *Id.* ¶ 11.

**{31}** Similar testimony was offered in this case. Pendleton testified that (1) the images on the surveillance video were from the Wal-Mart location at which she works, (2) the date and time information is programmed remotely, (3) local employees do not have the ability to manipulate that information, and (4) she is able to download surveillance video from specific dates and times for up to ninety days. Additionally, Detective Chambers testified that the surveillance video was downloaded in response to his request for recordings of specific dates and times.

**{32}** Certainly, with respect to the location and presence of Defendant, the State offered sufficient evidence to authenticate the surveillance video under Rule 11-901. With respect to the computer-generated graphics indicating the date and time, "[b]asic computer operations relied on in the ordinary course of business are admitted without an elaborate

---

[1]Though it is unclear from the opinion, we assume that the requested date and time were connected to the written record of the defendant's transaction.

showing of accuracy." 2 Broun, *McCormick on Evidence*, § 227 (7th ed. 2013); *see also United States v. Rembert*, 863 F.2d 1023, 1028 (D.C. Cir. 1988) (holding that "circumstantial evidence . . . as to the occurrences at the ATM machines, . . . coupled with the internal indicia of date, place, and event depicted in the evidence itself" was sufficient to authenticate photographic evidence). As Pendleton's testimony indicated, Wal-Mart's surveillance system operates continuously in the ordinary course of business.

**{33}** Detective Chambers requested that Wal-Mart loss prevention officers provide segments of surveillance video for certain dates and times based upon the information contained in the spreadsheet created by Jacobson. The segments of surveillance video for the requested times showed Defendant attempting transactions. These attempts were unsuccessful. That the dates and times requested by Detective Chambers overlap with Defendant's attempted transactions is strong circumstantial evidence that the computer-generated graphics indicating date and time are accurate. Furthermore, neither the record proper nor Defendant's appellate briefing suggest that the surveillance videos, including the computer-generated graphics indicating date and time, were materially altered or incorrect in any way.

**{34}** We decline, in the absence of a specific challenge to the accuracy of such information, to require higher requirements for authentication of surveillance video containing computer-generated graphics indicating the date and time simply because such graphics could theoretically be manipulated. *Cf., e.g.*, *People v. Goldsmith*, 326 P.3d 239, 248 (Cal. 2014) ("We decline to require a greater showing of authentication for the admissibility of digital images merely because in theory they can be manipulated."). Because the record evidence satisfies the authentication requirements of Rule 11-901, the district court's admission of the surveillance video did not constitute an abuse of discretion.

**Chain of Custody**

**{35}** Defendant's final evidentiary argument relates to the chain of custody of the Wal-Mart surveillance video. Defendant bases this argument upon her contention that no witness testified that the surveillance video "had not been tampered with." However, as this Court has previously held, "[t]he [s]tate is not required to establish the chain of custody in sufficient detail to exclude all possibility of tampering." *State v. Peters*, 1997-NMCA-084, ¶ 26, 123 N.M. 667, 944 P.2d 896.

**{36}** "Questions concerning a possible gap in the chain of custody affect[] the weight of the evidence, not its admissibility." *Id.* There is no abuse of discretion when, as here, a preponderance of the evidence shows that the evidence at issue is what the proponent purports it to be. *Id.*

**CONFRONTATION OF WITNESSES**

**{37}** As discussed above, a criminal defendant is entitled to confront testimony against

him or her. *Ortega*, 2014-NMSC-017, ¶ 18. Defendant argues that the surveillance video's computer-generated graphics indicating the date and time are testimonial in nature. Certainly, if the computer-generated graphics are testimonial, Defendant would have certain confrontation rights. "Claimed violations of the Sixth Amendment right to confrontation are reviewed de novo." *State v. Tollardo*, 2012-NMSC-008, ¶ 15, 275 P.3d 110.

**{38}** A defendant's confrontation rights extend to the "testimonial statements of a witness who did not appear at trial unless [the witness] was unavailable to testify, and the defendant had . . . prior opportunity for cross-examination." *State v. Gurule*, 2013-NMSC-025, ¶ 33, 303 P.3d 838 (internal quotation marks and citation omitted). A statement is testimonial if its primary purpose "is to establish or prove past events potentially relevant to later criminal prosecution." *State v. Navarette*, 2013-NMSC-003, ¶ 8, 294 P.3d 435 (internal quotation marks and citation omitted). "When the 'primary purpose' of a statement is not to create a record for trial," the Confrontation Clause is not implicated. *Bullcoming v. New Mexico*, 564 U.S. 647, 669 (2011) (Sotomayor, J., concurring in part) (internal quotation marks and citation omitted).

**{39}** Business records, including the surveillance videos at issue in this case, usually are not testimonial. *See Crawford v. Washington*, 541 U.S. 36, 56 (2004) ("Most of the hearsay exceptions covered statements that by their nature were not testimonial—for example, business records or statements in furtherance of a conspiracy."). Defendant, however, argued at trial that the Wal-Mart surveillance system functions "purely for prosecution purposes." She reiterates this argument on appeal. We disagree.

**{40}** Scholarly articles on this topic indicate numerous non-prosecutorial purposes for surveillance systems in a retail environment. *See, e.g.*, Robert D. Bickel et al., *Seeing Past Privacy: Will the Development and Application of CCTV and Other Video Security Technology Compromise an Essential Constitutional Right in a Democracy, or Will the Courts Strike a Proper Balance?*, 33 Stetson L. Rev. 299, 305 (2003) ("Cameras are also increasingly used in the workplace to monitor employee productivity, to deter theft, and to enhance workplace security. In addition, cameras are now common in retail establishments to assist in loss prevention and customer safety." (footnote omitted)); Christopher S. Milligan, Note, *Facial Recognition Technology, Video Surveillance, and Privacy*, 9 S. Cal. Interdisc. L.J. 295, 302 (1999) ("A large number of companies and businesses use hidden cameras to monitor employee productivity, to deter theft and fraud, or to ensure safety in the workplace. Retailers have used video surveillance in their loss-prevention programs for a number of years." (footnote omitted)); Alexandra Fiore & Matthew Weinick, Note, *Undignified in Defeat: An Analysis of the Stagnation and Demise of Proposed Legislation Limiting Video Surveillance in the Workplace and Suggestions for Change*, 25 Hofstra Lab. & Emp. L.J. 525, 527 (2008) ("Employers use surveillance to monitor productivity, and to protect property and workers' safety."). The arguments of defense counsel are "not to be regarded as evidence." *Miera v. Territory*, 1905-NMSC-022, ¶ 17, 13 N.M. 192, 81 P. 586. Despite inferences to be drawn from the above cited articles, Defendant has not directed this Court to any evidence establishing that the primary purpose of Wal-Mart's surveillance

system is to "create a record for trial." *Bullcoming*, 564 U.S. at 669. In the absence of such evidence, we decline to conclude that the surveillance videos at issue are testimonial such as to implicate the Confrontation Clause.

**CONCLUSION**

**{41}**     For the foregoing reasons, we affirm Defendant's convictions.

**{42}     IT IS SO ORDERED.**

 

_____

**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____

**MICHAEL E. VIGIL, Judge**

_____

**M. MONICA ZAMORA, Judge**