This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-39983

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**ROBERT BURNHAM,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Steven Blankinship, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Van Snow, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Joelle N. Gonzales, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**BACA, Judge.**

**{1}** Defendant Robert Burnham was charged with and convicted of aggravated assault with a deadly weapon (firearm), contrary to NMSA 1978, Section 30-3-2(A) (1963). On appeal, Defendant contends that (1) his right to a speedy trial was violated; (2) the district court erred in admitting surveillance video evidence; (3) the prosecution committed misconduct; and (4) the district court erred by denying Defendant's motion

for a new trial without holding an evidentiary hearing on the motion. For the following reasons, we affirm on all issues.

## BACKGROUND

**{2}** Because this is an unpublished memorandum opinion written solely for the benefit of the parties, *see State v. Gonzales*, 1990-NMCA-040, ¶ 48, 110 N.M. 218, 794 P.2d 361, and the parties are familiar with the factual and procedural background of this case, we omit a background section and leave the discussion of the facts for our analysis of the issues.

## DISCUSSION

### I.     Defendant's Right to a Speedy Trial Was Not Violated

### A.     Standard of Review

**{3}** To determine whether a defendant's right to a speedy trial was violated, we employ a four-factor balancing test articulated by the United States Supreme Court in *Barker v. Wingo*: (1) length of delay, (2) reasons for delay, (3) assertion of the right, and (4) prejudice to the defendant. 407 U.S. 514, 530 (1972); *State v. Serros*, 2016-NMSC-008, ¶ 5, 366 P.3d 1121. We weigh each factor either in favor of or against the state or the defendant, and then we determine if, on balance, the right to a speedy trial was violated. *State v. Spearman*, 2012-NMSC-023, ¶ 17, 283 P.3d 272. In doing so, "[w]e defer to the district court's factual findings in considering a speedy trial claim, but weigh each factor de novo." *State v. Ochoa*, 2017-NMSC-031, ¶ 4, 406 P.3d 505. "[F]actual findings of a district court are entitled to *substantial* deference and will be reversed only for clear error." *State v. Gurule*, 2025-NMSC-010, ¶ 20, 563 P.3d 775 (emphasis added) (internal quotation marks and citation omitted). Consequently, "when a district court considers the *Barker* factors and supporting factual findings are not clearly in error, the district court's judgment of how opposing considerations balance should not lightly be disturbed." *Id.* (internal quotation marks and citation omitted). We turn now to consider each *Barker* factor in turn.

### B.     The *Barker* Factors

### 1.     Length of Delay

**{4}** The length of delay serves a dual function. *Serros*, 2016-NMSC-008, ¶ 22. First, once the length of delay crosses the "presumptively prejudicial" threshold, consideration of the *Barker* factors is triggered. *Id.* Second, the length of delay is an independent factor to be considered in determining whether the right to a speedy trial was violated. *Id.*

**{5}** In this case the parties and the district court agree that a forty-two-month delay between Defendant's arrest on January 14, 2018, and his trial on July 26, 2021, for this

simple case was presumptively prejudicial and weighed heavily against the State. We agree. As a result, we conclude not only that presumptive prejudice is established, and consideration of the *Barker* factors triggered, but also that the forty-two-month delay weighs heavily against the State. *See id.* ¶¶ 22-24 (holding that a fifty-one-month delay in an intermediate or complex case was "extraordinary, and therefore it weigh[ed] heavily in [the d]efendant's favor"); *State v. Brown*, 2017-NMCA-046, ¶¶ 16-17, 396 P.3d 171 (holding that a delay of forty-two months in a complex case weighed heavily in the defendant's favor). Consequently, we proceed to consider the balance of the *Barker* factors beginning with the reasons for delay.

## 2.     Reasons for Delay

{6}     Under the second *Barker* factor, we evaluate the reasons for the delay. *See Ochoa*, 2017-NMSC-031, ¶ 18. Different weights are assigned to different reasons for delay. *Spearman*, 2012-NMSC-023, ¶ 25. On one end of the spectrum, a deliberate attempt to delay trial to hamper the defense weighs heavily against the State. *Ochoa*, 2017-NMSC-031, ¶ 18. Moving across the spectrum, "negligent or administrative delay weighs less heavily but nevertheless weighs against the [s]tate because the ultimate responsibility for such circumstances must rest with the [state] rather than with the defendant." *Id.* (internal quotation marks and citation omitted). Next in the spectrum, is "neutral delay, or delay justified by a valid reason, [which] does not weigh against either party." *Id.* Finally, on the other end of the spectrum is "delay initiated by defense counsel[, which] generally weighs against the defendant." *Id.* With this in mind, we turn now to the facts of this case.

### a.     January 14, 2018 to October 2, 2018—Approximately Eight and One-Half Months (Two Hundred and Sixty-One Days) of Neutral Delay

{7}     Defendant was arrested on January 14, 2018, and a criminal complaint was filed in Doña Ana County Magistrate Court on January 16, 2018. Defendant was subsequently indicted on February 22, 2018. On March 23, 2018, following his designation to preside over the case, Judge Blankinship set the case for an arraignment/pretrial conference to be held on March 29, 2018. At this hearing, the district court set trial for October 2, 2018.

{8}     Despite the need to appoint a judge from outside the district during this time period and confusion and delay by Defendant in retaining counsel, we conclude that the case was proceeding with customary promptness and treat this two hundred and sixty-one days (eight months and eighteen days) as neutral delay. *See State v. Moreno*, 2010-NMCA-044, ¶ 13, 148 N.M. 253, 233 P.3d 782 ("During this period, it appears that the case proceeded with customary promptness and delay cannot be held against either party.").

### b.     October 2, 2018 to May 8, 2019—Seven Months and Six days (Two Hundred Eighteen Days) of Delay Weighing Against Defendant

**{9}** On July 17, 2018, based on the State's motion to determine counsel for Defendant because no counsel had entered their appearance on his behalf, the district court held a hearing. Following the hearing, the district court ordered Defendant to obtain counsel within ten days. The district court further instructed Defendant to inform his prospective attorney that the matter would be set for trial "in November or December." The court reset trial for December 4, 2018. Two days after the hearing, private counsel entered an appearance for Defendant.

**{10}** At a November 5, 2018 pretrial conference, Defendant moved for a ninety-day continuance because he needed time to prepare the defense. The district court granted Defendant's request and reset the jury trial for May 9, 2019. However, on May 8, 2019, Defendant entered into a plea agreement.

**{11}** Defendant argues that the delay from October 2, 2018 to December 4, 2018, was administrative delay "caused by either government entities (the State and [the] LOPD) and the court's docket control and should be attributed to the State." We are not persuaded. Because Defendant wished to be represented in this case by an attorney, it was his responsibility to obtain an attorney, whether it be a public defender or a private attorney. This delay is charged to Defendant.

**{12}** As to the delay from December 4, 2018 to May 9, 2019, Defendant contends that he is only responsible for ninety days of the delay due to his request for a ninety-day continuance and that the balance of the delay should be charged to the State as administrative delay. We disagree and conclude that Defendant must bear the responsibility for any delay caused by his new counsel's request for a continuance—the resetting of the December 4, 2018 trial to May 9, 2019. We, therefore, conclude that the resulting seven months and six days of delay between October 2, 2018, and May 8, 2019 weighs against Defendant.

### c. May 8, 2019 to September 5, 2019—Three Months and Twenty-Eight Days (One Hundred Twenty Days) of Neutral Delay

**{13}** On May 8, 2019, Defendant entered into a plea agreement and pleaded guilty to the sole charge in the indictment. Subsequently, new counsel entered his appearance and on August 29, 2019, Defendant moved to withdraw his guilty plea. The district court filed its "Order Granting Motion to Withdraw Plea of Guilty" on September 5, 2019. The district court held that this period weighed against Defendant. However, the State contends that this period should be excluded from the speedy trial calculation and Defendant contends that this period should be weighed neutrally. Based on this Court's recent decision in *State v. Castillo*, we weigh this period neutrally. 2023-NMCA-063, ¶¶ 12, 14, 535 P.3d 697 (holding that "our speedy trial analysis does not include the period after [the d]efendant pleaded guilty" and that the period between a defendant's entry of a guilty plea and their withdrawal of the guilty plea is "not relevant to our speedy trial analysis").

**d. September 5, 2019 to March 17, 2020—Six Months and Twelve Days (One Hundred Ninety-Four Days) of Delay Weighing Against Defendant**

**{14}** At a September 30, 2019 status conference, Defendant's new counsel admitted that he had not yet requested pretrial interviews of the State's witnesses. When the court asked if the parties could complete pretrial interviews in sixty days, the State said that it could. Defense counsel said that he would prefer seventy-five days because he had other scheduled trials coming up and some witnesses had moved. Subsequently, while discussing the scheduling of trial, defense counsel stated that he "would be happy" with a March or April trial so that the parties would not need to ask for continuances during the holidays. After much discussion, the court determined that the trial would be held on April 28, 2020.

**{15}** While we note that the district court did not specifically discuss this period in its order, this period is a part of the delay in this case and should be addressed. After considering the parties differing views regarding this period of delay, we agree with the State and conclude that this delay should be charged to Defendant. This delay occurred because of the need for Defendant's new counsel to interview witnesses and because of defense counsel's agreement to a trial setting in March or April so that the parties would not need to ask for continuances during the holidays. We, therefore, conclude that this six-month and twelve-day delay weighs against Defendant.

**e. March 17, 2020 to July 26, 2021—Sixteen Months and Nine Days (Four Hundred Ninety-Seven Days) of Delay Weighing Against a Finding of a Speedy Trial Violation**

**{16}** On March 17, 2020, our New Mexico Supreme Court suspended all jury trials because of the COVID-19 pandemic.[1] Then, on April 16, 2020, the suspension of criminal jury trials was extended to May 29, 2020.[2] On May 28, 2020, our Supreme Court lifted the jury trial suspension.[3] Subsequently, on November 13, 2020, our Supreme Court for a second time temporarily suspended jury trials until January 1, 2021.[4] This suspension was extended to February 1, 2021.[5] Following the

---

[1]*See* Supreme Court Order, No. 20-8500-002 (March 17, 2020), https://supremecourt.nmcourts.gov/wp-content/uploads/sites/2/2024/03/Order-No.-20-8500-002-In-the-Matter-of-Precautionary-Measures-for-Court-Operations-in-the-New-Mexico-Judiciary-during-the-COVID-19-Public-Health-Emergency-3.17.20.pdf.

[2]*See* Supreme Court Order, No. 20-8500-013 (April 16, 2020), https://supremecourt.nmcourts.gov/wp-content/uploads/sites/2/2024/03/Order-No.-20-8500-013-In-the-Matter-of-Updated-Precautionary-Measures-for-Court-Operations-4.16.20.pdf.

[3]*See* Supreme Court Order, No. 20-8500-020 (May 28, 2020), https://supremecourt.nmcourts.gov/wp-content/uploads/sites/2/2024/03/Order-No.-20-8500-020-In-the-Matter-of-Recommencing-Jury-Trials-5.28.20.pdf.

[4]*See* Supreme Court Order, No. 20-8500-039 (November 13, 2020), https://supremecourt.nmcourts.gov/wp-content/uploads/sites/2/2024/03/Order-No.-20-8500-039-Amending-PHE-Protocols-Nos-1-2-and-3-13-Nov-2020.pdf.

[5]*See* Supreme Court Order, No. 20-8500-042 (December 14, 2020), https://supremecourt.nmcourts.gov/wp-content/uploads/sites/2/2024/03/Order-No.-20-8500-042-Amending-PHE-Protocols-1-2-and-3-12-14-20.pdf.

recommencement of criminal jury trials, the district court set Defendant's trial for July 26, 2021. Defendant's trial began on July 26, 2021 and ended on July 27, 2021.

**{17}** As to the weight of delay caused by the COVID-19 pandemic, this Court has recently "decline[d] to categorically assign to either party the weight of delay caused by the suspension of criminal jury trials due to the COVID-19 pandemic." *State v. Pate*, 2023-NMCA-088, ¶ 9, 538 P.3d 450, *cert. denied*, 2023-NMCERT-008 (S-1-SC-39924). Instead, we held that "we consider the circumstances of the particular case." *Id.*

**{18}** Here Defendant was not incarcerated during this period of delay. Moreover, Defendant, while complaining on appeal about not receiving a speedy trial during periods of the pandemic, also alleged in his motion to dismiss that he was being prejudiced by being required to proceed to jury trial during the pandemic. Finally, while filing a motion to dismiss for violation of his right to speedy trial, Defendant also filed a motion to continue trial and, upon denial of that motion, a motion to reconsider. In light of these considerations, we agree with the district court and conclude that the approximately sixteen months of delay during which, because of the COVID-19 pandemic, the district court was unable to hold trial weighs against a finding of a speedy trial violation.

### f. Overall Determination of the Reasons for Delay

**{19}** In this case, we conclude that approximately twenty-nine and one-half months of delay weighs either against Defendant or against a finding of a speedy trial violation, and approximately twelve and one-half months is neutral delay. Significantly, we conclude that none of the delay is attributable to the State. Moreover, in assessing the reasons for delay, we note that "[a] defendant is more likely to prevail if the defendant can show that the Government had intentionally held back in its prosecution of him to gain some impermissible advantage at trial." *State v. Garza*, 2009-NMSC-038, ¶ 25, 146 N.M. 499, 212 P.3d 387. Because here over two years of delay is either attributable to Defendant or weighs against a finding of a speedy trial violation, and because none of the delay is attributable to the State, the reasons for delay factor weighs against Defendant.

### 3. Assertion of the Right

**{20}** When analyzing whether a defendant asserted his right to a speedy trial, "we accord weight to the frequency and force of the defendant's objections to the delay, and we also analyze the defendant's actions with regard to the delay." *Serros*, 2016-NMSC-008, ¶ 76 (alterations, internal quotation marks, and citation omitted). "On one hand, a single demand for a speedy trial is sufficient to assert the right. On the other hand, a defendant's assertion can be weakened by a defendant's acquiescence to the delay." *State v. Salazar*, 2018-NMCA-030, ¶ 24, 458 P.3d 485 (internal quotation marks and citation omitted). We also consider "[t]he consistency of a defendant's legal positions with respect to the delay." *Id.* (internal quotation marks and citation omitted)*.*

**{21}** In this case, Defendant asserted his right to a speedy trial only once by filing a "Motion to Dismiss for Violation of Speedy Trial Act" less than a month before trial, on July 7, 2021. Yet, less than a week later, on July 12, 2021, Defendant filed a motion to continue trial and a subsequent motion to reconsider, both of which the district court denied. Accordingly, we conclude that this *Barker* factor weighs against Defendant. *See id.* ¶ 26 (concluding that "the third *Barker* factor weighs against [the d]efendant" because "[a]lthough [the d]efendant's assertions of his right to a speedy trial were frequent, they lacked force and were further mitigated by [the d]efendant's multiple motions for continuances").

### 4. Prejudice to Defendant

**{22}** "In a speedy trial analysis, if any one of the three *Barker* factors does not weigh heavily in favor of a defendant, as is the case here, [the d]efendant must show particularized prejudice in order to prove their speedy trial [right] was violated." *State v. Wood*, 2022-NMCA-009, ¶ 21, 504 P.3d 579. The right to a speedy trial protects three interests. *See Garza*, 2009-NMSC-038, ¶ 35. First, the right to a speedy trial protects against oppressive pretrial incarceration. *Id.* Here, Defendant was arrested on January 14, 2018, and was released on an unsecured appearance bond on January 18, 2018. Thus, this interest is of minimal concern because Defendant was incarcerated for approximately four days. Second, the right to a speedy trial limits the possibility of impairment to the defense. *Id.* Impairment to the defense "is the most serious" type of prejudice. *Id.* ¶¶ 35-36 (internal quotation marks and citation omitted). Defendant does not argue that his defense was impaired by the delay in his case. Third, the right to a speedy trial minimizes the anxiety and concern of the accused. *Id.* ¶ 35. This interest is at the center of Defendant's argument here.

**{23}** "We are mindful that some degree of anxiety is inherent for every defendant awaiting trial." *State v. Lujan*, 2015-NMCA-032, ¶ 20, 345 P.3d 1103 (omissions, internal quotation marks, and citation omitted). As such, "we weigh this factor in the defendant's favor only where the anxiety suffered is undue." *Id.* (omission, internal quotation marks, and citation omitted). The anxiety suffered is undue where it "has continued for an unacceptably long period." *Id.* Additionally, "[w]ithout a connection between prejudice and delay, [the d]efendant cannot demonstrate . . . that the asserted prejudice occurred as a result of . . . delay." *Pate*, 2023-NMCA-088, ¶ 18.

**{24}** In this case, Defendant asserts that he suffered prejudice in the form of (1) financial loss, including the loss of his business, the withholding of his personal property located therein, and the depletion of his financial resources; (2) the inability to find employment and to work in his chosen profession; (3) public obloquy; (4) family disruption; and (5) a decline in mental and emotional health.

**{25}** Here, the district court found that there was actual prejudice to Defendant and that it weighed only slightly in Defendant's favor. Significantly, however, the district court also found that (1) "the defense did not provide any specific articulation other than a very general assertion of anxiety"; (2) "[t]he inference from the record, however, does

not support a greater sense of anxiety for this defendant than an average defendant would have experienced"; and (3) "it was extremely difficult for the [district] [c]ourt to differentiate between those prejudices suffered because of the charges versus prejudice attributable to delay." Thus, despite the district court's finding of prejudice, it appears that the district court was not convinced that the anxiety and concern suffered by Defendant was more than that suffered by the average defendant in a criminal case and that the prejudice suffered by Defendant may not be entirely attributable to the delay in this case. Consequently, we conclude that although the district court found that Defendant suffered prejudice as a result of anxiety and concern, the anxiety and concern was not undue or unnecessarily prolonged. *See Lujan*, 2015-NMCA-032, ¶ 20. Because we discern no *undue* prejudice under the circumstances, the prejudice factor weighs against Defendant.

### 5. Balancing the factors

**{26}** "To find a speedy trial violation without a showing of actual prejudice, the Court must find that the three other *Barker* factors weigh heavily against the [s]tate." *State v. Samora*, 2016-NMSC-031, ¶ 23, 387 P.3d 230. Although the length of the delay in this case weighs heavily against the State, Defendant has not demonstrated undue prejudice and the other *Barker* factors do not weigh in favor of Defendant. We therefore conclude that on balance there was no speedy trial violation. *See id.* ¶¶ 10, 23 (concluding that the defendant's speedy trial right was not violated although the length of delay weighed heavily against the state because the other *Barker* factors did not weigh heavily against the state). Accordingly, we turn to examine Defendant's other claims.

## II. The District Court Did Not Err in Admitting Surveillance Video Evidence

### A. Standard of Review

**{27}** "We review a district court's admission of evidence for an abuse of discretion." *State v. Imperial*, 2017-NMCA-040, ¶ 14, 392 P.3d 658. "A court abuses its discretion when its ruling is clearly against the logic and effect of the facts and circumstances of the case." *Id.* (internal quotation marks and citation omitted).

### B. Evidence Supports the District Court's Findings Regarding Exhibits 13 and 14

**{28}** Under Rule 11-901(A) NMRA: "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Authenticity is a "low threshold of proof." *State v. Jesenya O.*, 2022-NMSC-014, ¶ 33, 514 P.3d 445; *see Imperial*, 2017-NMCA-040, ¶ 29. When determining if the State has met this threshold, we must "afford due deference to the discretion of the district court, which is charged with determining whether a preponderance of the evidence supports a finding of authenticity." *Jesenya O.*, 2022-NMSC-014, ¶ 30. Finally, Rule 11-901(B)(1), (4) NMRA

provide that the following evidence satisfies the requirement of Rule 11-901(A): "[t]estimony that an item is what it is claimed to be" and "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Rule 11-901(B)(1), (4).

**{29}**    In this case, testimony that the exhibits are what they are claimed to be and evidence consistent with their distinctive characteristics establish that Exhibit 13 is the surveillance video evidence taken from the business Game II and Exhibit 14 is the recording made by Mr. Detlaff. Mr. Detlaff testified that (1) he arrived at Game II, met with an employee of Game II, "downloaded video from their video surveillance system to collect it and save it" on a USB thumb drive, and entered it into evidence at the Las Cruces Police Department; (2) he watched the recording and noticed the timing issue; (3) he played the video again on the Game II surveillance system and he recorded the video with a camera so he could "get the true speed of the video"; (4) he put the recording onto a secure police department server which only four people, including himself, had full access to; (5) he thereafter reviewed the recording to make sure it was the one he collected; (6) he was present when the files were burned onto a disk; (7) after reviewing the video, he signed and printed his name on the disk; and (8) Exhibit 13 is the video recovered from the surveillance system of Game II and Exhibit 14 is the recording from the video camera.

**{30}**    Furthermore, the contents of Exhibits 13 and 14, together with the reasonable inferences therefrom, also establish that Exhibit 13 is the surveillance video evidence taken from Game II and Exhibit 14 is the recording made by Mr. Detlaff. The parties agree that on the night in question Defendant parked his Jeep in the parking lot of Game II, and that at some point Defendant walked back out to his Jeep and drove away. Exhibit 13 shows a Jeep in the parking lot. Exhibit 13 further shows some figures going up to the Jeep before one gets inside and drives away. "[T]he genuineness of a particular document—whether conventional or digital—is assessed through reliance on reasonable inferences, not absolute certainty." *Jesenya O.*, 2022-NMSC-014, ¶ 30. The State therefore produced evidence sufficient to support a finding that Exhibits 13 and 14 are what the State claimed they were.

**{31}**    Defendant calls our attention to the fact that the speed of the recording "'would jitter. It would go fast, it would go slow,' the timestamp was off, and in comparing the two videos submitted, the actual length of time was different." Defendant, citing *State v. Glen Slaughter & Associates*, submits that because the record suggests inaccuracies the State needed "[a] witness (who is subject to cross-examination) [who] can identify the tape recording as one produced by a specific machine at a specific time and place and can allay concerns about tampering with the tape." *See* 1994-NMCA-169, ¶ 5, 119 N.M. 219, 889 P.2d 254 (emphasis omitted).

**{32}**    Defendant appears to argue that Mr. Detlaff could not serve as such a witness because Mr. Detlaff "lacked the requisite knowledge to authenticate the surveillance video." Defendant asserts that Mr. Detlaff lacked the requisite knowledge to authenticate because (1) "Mr. Detlaff agreed that he did not collect this evidence until

nine days after the incident, and could not testify as to how surveillance footage was stored during those days"; (2) "Mr. Detlaff 'guess[ed]' that they were stored on the surveillance system that he downloaded it from"; (3) Mr. Detlaff "could not testify as to whether [an employee of Game II] had tampered with the surveillance system"; (4) "Mr. Detlaff also could not answer whether [the employee of Game II] gave him the complete video of the incident"; (5) Mr. Detlaff "did not know if anyone else at the Game II had access to the surveillance system and altered it in any way between January 14, 2018 and January 23, 2018"; (6) Mr. Detlaff "did not have any information as to whether the surveillance system had been working properly on January 14, 2018"; and (7) "Mr. Detlaff's testimony made no mention as to what was burned onto the dis[k] and how." However, Defendant's reliance on *Glen Slaughter & Associates* is misplaced.

**{33}** In *Glen Slaughter & Associates*, the defendant argued that "admission at trial of the tape recording . . . violated the hearsay rule" in part because of the inability to cross-examine a recording. *Id.* ¶ 4. There, we stated that

> The strength of the inference [of what was said on a particular occasion] derives from the authentication of the real evidence—the tape recording. A witness (who *is* subject to cross-examination) can identify the tape recording as one produced by a specific machine at a specific time and place and can allay concerns about tampering with the tape. . . . As real evidence, authenticated tape recordings and the like are universally admissible to prove what happened.

*Id.* ¶¶ 5-6. *Glen Slaughter & Associates* therefore stands for the proposition that authenticated tape recordings are sufficiently reliable proof of what happened to be admitted as real evidence. *See id.* ¶ 6. *Glen Slaughter & Associates* does not, contrary to Defendant's argument, stand for an absolute requirement that the State allay with certainty any concerns about tampering to authenticate a tape recording.

**{34}** In fact, in *Jesenya O.*, we "concluded that the [s]tate's circumstantial evidence of authenticity was inadequate, in part because the content of the messages was not sufficiently confidential to establish that *only* [the c]hild could have authored the messages." 2022-NMSC-014, ¶ 30 (internal quotation marks and citation omitted). Our Supreme Court held that the test this Court applied "is at odds with the flexible approach that the authentication process envisions, under which the genuineness of a particular document–whether conventional or digital–is assessed through reliance on reasonable inferences, not absolute certainty." *Id.* Thus, here the State did not need to establish with absolute certainty that no one else could have possibly tampered with the tape. Instead, Defendant's argument, premised on the possibility that others could have altered the recordings, went to the weight of the evidence, not its admissibility. *See id.* ¶ 31 ("[The c]hild's argument, premised on the possibility that others could have sent the . . . messages, went to the weight of the evidence, not its admissibility.").

**{35}** Defendant also cites *Imperial* for the proposition that because there is evidence suggesting possible alterations of the videos, the district court abused its discretion in

admitting them as authenticated. *See* 2017-NMCA-040, ¶¶ 33-34 (holding that the district court did not abuse its discretion in admitting evidence where "neither the record proper nor [the d]efendant's appellate briefing suggest that the surveillance videos, including the computer-generated graphics indicating date and time, were materially altered or incorrect in any way"). However, simply because in *Imperial* we upheld the admission of evidence where there was no suggestion of possible alterations does not mean we would *reverse* the admission of evidence because there may be suggestion of possible alteration. Instead, the standard for authentication is deferential to the district court's determination of whether a preponderance of the evidence supports a finding of authenticity. *See Jesenya O.*, 2022-NMSC-014, ¶ 30 ("[S]uch an approach fails to afford due deference to the discretion of the district court, which is charged with determining whether a preponderance of the evidence supports a finding of authenticity."). Consequently, noting as we did in *Imperial* that there is a "low bar for authentication" and that "the record evidence satisfies the authentication requirements of Rule 11-901," we conclude as we did in *Imperial* that "the district court's admission of the [recordings] did not constitute an abuse of discretion." *See* 2017-NMCA-040, ¶¶ 29, 34.

**{36}** Because we have concluded that the district court did not abuse its discretion, it is not necessary for us to reach Defendant's argument that the error was not harmless. *See State v. Smith*, 2016-NMSC-007, ¶ 46, 367 P.3d 420 ("An evidentiary ruling within the discretion of the court will constitute reversible error only upon a showing of an abuse of discretion *and* a demonstration that the error was prejudicial rather than harmless." (emphasis added)).

## III.     The Prosecution Did Not Commit Misconduct

### A.     Standard of Review

**{37}** Defendant concedes that he did not object in the district court to the questions and statements of the prosecutor that he now argues were improper. "When an issue has not been properly preserved by a timely objection at trial, we have discretion to review the claim on appeal for fundamental error." *State v. Trujillo*, 2002-NMSC-005, ¶ 52, 131 N.M. 709, 42 P.3d 814; *see* Rule 12-321(B)(2) NMRA. "Fundamental-error analysis . . . requires a higher level of scrutiny." *State v. Barber*, 2004-NMSC-019, ¶ 19, 135 N.M. 621, 92 P.3d 633. "The rule of fundamental error applies only if there has been a miscarriage of justice, if the question of guilt is so doubtful that it would shock the conscience to permit the conviction to stand, or if substantial justice has not been done." *State v. Dartez*, 1998-NMCA-009, ¶ 21, 124 N.M. 455, 952 P.2d 450 (internal quotation marks and citation omitted).

### B.     Defendant Has Not Identified Prosecutorial Error

**{38}** "Prosecutorial misconduct rises to the level of fundamental error when it is so egregious and had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial." *Trujillo*, 2002-NMSC-005, ¶ 52. Defendant argues that the State erred by asking the following questions: "It's clear to everyone

you're not here today in person, in the courtroom. . . . You did not travel and take the time and expense to get here to testify in person? . . . Did you know that work places can have subpoenas and those are a lawful work excuse to miss work, to come to trial? Moreover, Defendant contends that it was error, during closing arguments, for the State to say: "The friend for ten years who didn't come in person here to testify, was talking on a remote video. It's too easy to feel like you can just say something on the phone or remotely. He's not here in the presence of this sacred place, in front of the judge and the jury, saying what happened."

**{39}**    Defendant claims the above questions and statements were error for two reasons. First, Defendant contends that by the above questions and statements "[t]he State commented on facts outside of evidence." Yet that Defendant testified remotely was not a fact outside of evidence. Defendant's witness confirmed during cross-examination that he was not testifying in person and that a subpoena was a lawful excuse to miss work.

**{40}**    Second, Defendant asserts that "[t]he prosecutor did not simply ask the jury to recall [defense witness's] demeanor during his testimony, but rather, basically told the jury [defense witness] could not be believed because he was testifying remotely. This was highly prejudicial and improper because [defense witness] was a key witness for [Defendant's] defense." Defendant cites no authority for the proposition that it is improper for a prosecutor to comment on the fact that a witness testifies remotely. "We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority." *In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329. "Issues raised in appellate briefs which are unsupported by cited authority will not be reviewed by us on appeal." *Id.*

**{41}**    Defendant has not identified any legal rule that the State has violated, and therefore has not established error. Because Defendant has failed to establish error we need not consider whether the alleged error was fundamental. *See Farmers, Inc. v. Dal Mach. & Fabricating, Inc.*, 1990-NMSC-100, ¶ 8, 111 N.M. 6, 800 P.2d 1063 (stating that the appellate court presumes that the district court is correct. The burden is on the appellant to clearly demonstrate that the district court erred).

## IV.    The District Court Did Not Err by Denying Defendant's Motion for a New Trial Without Holding an Evidentiary Hearing

**{42}**    Defendant lastly asks on appeal that we "remand for an evidentiary hearing" on his motion for new trial alleging judicial misconduct arguing that "the same judge who declined to develop the factual allegations after the filing of the motion for a new trial would now be tasked with reviewing [Defendant's] habeas claims, which could yield the same result—no hearing to develop the facts." While we agree with Defendant that allegations of judicial misconduct are very serious because they could bar retrial, *see State v. Hildreth*, 2022-NMSC-012, ¶ 21, 506 P.3d 354, we note that the judicial misconduct at issue in *Hildreth* is misconduct by the presiding judge during the proceedings. Defendant cites no authority allowing us to remand for an evidentiary

hearing on this matter, nor does Defendant provide any authority requiring a retrial if his allegations of judicial misconduct by a judge not involved in the case are accepted as true. There is no allegation that the legal authority suggested by the judge was wrong, or that it was not vetted and adopted by the prosecutor. *See* Rule 5-802 NMRA (detailing the procedure for habeas corpus proceedings); *see also In re Adoption of Doe*, 1984-NMSC-024, ¶ 2 ("Issues raised in appellate briefs which are unsupported by cited authority will not be reviewed by us on appeal."). Thus, even if, as Defendant contends, the standard of review is abuse of discretion, the district court has not abused its discretion. Defendant, of course, remains free to bring his judicial misconduct allegations in a habeas proceeding. *See Matter of Martinez*, 1982-NMSC-115, ¶¶ 1, 34, 99 N.M. 198, 656 P.2d 861 (reviewing allegations of judicial misconduct and providing that habeas corpus may be sought after post-conviction proceedings are invoked).

**CONCLUSION**

**{43}**    For the reasons stated above, we affirm on all grounds.

**{44}    IT IS SO ORDERED.**

**GERALD E. BACA, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**JANE B. YOHALEM, Judge**